STATE OF MINNESOTA

COUNTY OF RAMSEY

RECEIVED JAN 20 2012 BY: ..........

DISTRICT COURT

SECOND JUDICIAL DISTRICT

**BARBARA PETERSON**

Plaintiff,

v.

**HEALTHEAST WOODWINDS HOSPITAL,**

Defendant.

**SUMMONS**

**(CIVIL)**

## THIS SUMMONS IS DIRECTED TO THE ABOVE-NAMED DEFENDANT(S):

1. **YOU ARE BEING SUED.** The Plaintiff has started a lawsuit against you. The Plaintiff's Complaint against you is attached to this summons. Do not throw these papers away. They are official papers that affect your rights. You must respond to this lawsuit even though it may not yet been filed with the Court and there may be no court file number on this summons.

2. **YOU MUST REPLY WITHIN 20 DAYS TO PROTECT YOUR RIGHTS.** You must give or mail to the person who signed this summons a **written response** called an Answer within 20 days of the date on which you received this summons. You must send a copy of your Answer to the person who signed this summons located at: 2400 County Road D West, Suite 110, St. Paul, MN 55112.

3. **YOU MUST RESPOND TO EACH CLAIM.** The Answer is your written response to the Plaintiff's Complaint. In your Answer you must state whether you agree or disagree with each paragraph of the Complaint. If you believe the Plaintiff should not be given everything asked for in the Complaint, you must say so in your Answer.

4. **YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS SUMMONS.** If you do not Answer within 20 days, you will lose this case. You will not get to tell your side of the story, and the Court may decide against you and award the Plaintiff everything asked



EXHIBIT A

for in the Complaint. If you do not want to contest the claims stated in the Complaint, you do not need to respond. A default judgment can then be entered against you for the relief requested in the Complaint.

5. **LEGAL ASSISTANCE.** You may wish to get legal help from a lawyer. If you do not have a lawyer, the Court Administrator may have information about places where you can get legal assistance. **Even if you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case.**

6. **ALTERNATIVE DISPUTE RESOLUTION.** The parties may agree to or be ordered to participate in an alternative dispute resolution process under Rule 114 of the Minnesota General Rules of Practice. You must still send your written response to the Complaint even if you expect to use alternative means of resolving this dispute.

DATED: 1/19/2012

R.A. WILLIAMS LAW FIRM, P.A.

Richard A. Williams, Jr. 117559
2400 County Road D West, Suite 110
St. Paul, MN 55112
ATTORNEYS FOR PLAINTIFF
651-848-0280/Phone  651-848-0282/Fax

2

STATE OF MINNESOTA

COUNTY OF RAMSEY

DISTRICT COURT

SECOND JUDICIAL DISTRICT

BARBARA PETERSON

    Plaintiff,

v.

HEALTHEAST WOODWINDS HOSPITAL,

    Defendant.

COMPLAINT

JURY TRIAL DEMANDED

COMES NOW Plaintiff and for her cause of action against Defendant, claims and alleges as follows:

## PARTIES

1. At all times material hereto Plaintiff has been, and currently is, a resident of the State of Minnesota, County of Hennepin.

2. Defendant, HealthEast Woodwinds Hospital is a nonprofit corporation with its registered office at 559 Capitol Blvd., St. Paul, MN 55103. It is part of HealthEast Corporation.

## FACTS

3. Plaintiff was first employed by Defendant on January 1, 2003 as a patient advocate. While in that position, she received average to above average annual performance ratings.

4. The duties and responsibilities of a patient advocate are to act as a liaison between the hospital staff and patients and their families.

5. Among Plaintiff's duties and responsibilities were to take patient grievances regarding care they received while they were in the hospital or post discharge from the hospital and

investigate those grievances, maintain records of the investigation, and interface with the patient and/or the patient's family with respect to their concerns.

6. In the course of these duties and responsibilities, Plaintiff drafted letters to send to patients who had made complaints, addressing the complaints, and outlining the results of the investigation.

7. In addition, during her entire employment tenure, Plaintiff sat on Defendant Woodwind's ethics and HealthEast Corporation's patient rights committees.

8. Defendant participates in a hospital accreditation program pursuant to the Joint Commission for Accreditation of Healthcare Organizations (hereinafter "JCAHO").

9. The accreditation process involves periodic reviews by JCAHO of the Defendant, its procedures, and its records regarding patient care.

10. During the second half of 2009, Plaintiff was approached by her supervisor and instructed that as part of her duties she was to review all of her files regarding patient/family grievance case reports for the second half of 2009 and remove and destroy any medical related correspondence with patients/families that could become discoverable during any potential medical negligence or personal injury claim against Defendant. It was made clear to Plaintiff that this was to be done prior to the JCAHO licensing surveyor's visit.

11. Plaintiff was expressly told by her supervisor that, in addition to discarding any discoverable information that might be unfavorable to the hospital in any future medical negligence case, this was to make sure that there were no documents that might reflect disfavorably on the Defendant during the upcoming JCAHO evaluation.

12. During this time period, Plaintiff advised her supervisor that, as the Defendant's patient advocate and a standing member of the Defendant's ethics committee, she could not

destroy medical records. Plaintiff also advised she would not provide any redacted files to JCAHO or to any authorized representative of a patient. Plaintiff was instructed to make separate files that would be devoid of potential discoverable information to be provided by her supervisor to the JCAHO surveyors in the event they elected to review a sample of the Defendant's patient grievance reports.

13. In January 2010, Plaintiff received a complaint from a first-time mother patient complaining about the behavior of the OB-GYN specialist who had performed the delivery. The complaint arose out of the doctor's behavior and demeanor during the course of the delivery. Plaintiff, during the course of her investigation into the matter, was advised by the OB-GYN director that the evening the baby was delivered, two nurses who assisted in the delivery reported to the house lead that the physician was inebriated and smelled of alcohol while delivering the baby. Notwithstanding this report, the physician was permitted to leave the hospital. This precluded a mandatory just-cause drug and/or alcohol screening of the physician involved in the delivery.

14. During the course of Plaintiff's investigation of this event, Plaintiff was instructed to meet with the medical director regarding the matter. During that meeting, it was made clear to Plaintiff that the investigation was considered closed and information regarding the physician's condition should not be documented nor shared with the complaining patient.

15. As a result of Defendant's actions, Plaintiff began experiencing significant psychiatric issues. These included, without limitation, depression and post traumatic stress disorder symptoms.

3

16. As a result of Defendant's conduct, Plaintiff's mental health condition deteriorated to the point that she attempted suicide on February 22, 2010.

17. Plaintiff was then placed on a medical leave because of her severe depression, post traumatic stress disorder symptoms, and attempted suicide.

18. The medical leave of absence qualified Plaintiff for Family Medical Leave.

19. At the time that Plaintiff went on Family Medical Leave, she was advised by Defendant's management that, when she returned from Family Medical Leave, Defendant would, if necessary, create a new position for her that would not require reporting to the same supervisors.

20. During the time period that Plaintiff was on Family Medical Leave, she periodically communicated with Defendant's administration. In the course of these communications, Plaintiff advised Defendant that her physician would release her to return to work as long as she worked under different supervision. In accordance with Defendant's promise to find a job under a different supervisor when she was released to return to work, Plaintiff suggested to Defendant that she return working evenings under the emergency room medical director, as many of the complaints she dealt with arose out of patients seen in the emergency room. Plaintiff was advised during these communications that she should look for a different job outside of Woodwinds.

21. As a result of the refusal by Defendant to return Plaintiff to work under different supervision, Plaintiff applied for long-term disability. This resulted in an exacerbation of her symptoms and another suicide attempt on May 24, 2010.

22. On June 1, 2011, Plaintiff was terminated.

23. Defendant claimed at that time that Plaintiff had voluntarily quit by not returning to work and failing to maintain contact with Defendant

## COUNT ONE
## VIOLATIONS OF FAMILY MEDICAL LEAVE ACT

24. Plaintiff realleges paragraphs 1-23 above.

25. Defendant's actions as described above, deprived Plaintiff the right to exercise her re-employment rights pursuant to the Family Medical Leave Act.

26. Defendant's actions constituted retribution and/or retaliation for Plaintiff's use of family medical leave.

27. As a direct and proximate result of Defendant's wrongful conduct toward Plaintiff, Plaintiff has suffered damage from loss of wages and benefits that she has not yet been able to replace fully, despite diligent efforts to do so, emotional distress, punitive damages, attorneys fees and other damages recoverable under the Family Medical Leave Act, all in an amount to be determined at trial in excess of $50,000.

## COUNT TWO
## VIOLATIONS OF MINN. STAT. §181.932
## DESTRUCTION OF DOCUMENTS

28. Plaintiff realleges paragraphs 1-27 above.

29. When Plaintiff refused to alter records by destroying and removing documents, she had a reasonable good faith belief, which she expressed to her supervisor, that such actions were contrary to law and policy.

30. Minnesota Statutes §609.63, subd.1(5), makes it a felony if, with intent to defraud, a person "destroys, mutilates, or by alteration, false entry or omission falsifies any record, account, or other document relating to a private business or ... (7) destroys a writing or

object to prevent it from being produced at a trial, hearing or other proceeding authorized by law."

31. At the time these events took place, Plaintiff had a reasonable good faith belief that she was being asked to perform an act that would be in violation of law and a violation of generally professionally recognized standards with respect to maintenance of health records in a hospital.

32. Defendant's actions caused extreme emotional distress for Plaintiff, ultimately resulting in an attempted suicide.

33. Defendant's actions in failing and refusing to return Plaintiff to work and terminating Plaintiff, alleging she had abandoned her position, were in direct retaliation for Plaintiff's refusal to participate in the unlawful acts.

34. As a direct and proximate result of Defendant's wrongful conduct toward Plaintiff, Plaintiff has suffered damage from loss of wages and benefits that she has not yet been able to replace fully despite diligent efforts to do so, which loss of wages and benefits are continuing, in an amount to be determined at trial in excess of $50,000.

35. As a direct and proximate result of Defendant's wrongful conduct toward Plaintiff, Plaintiff has suffered extreme emotional distress and anxiety, which extreme emotional distress and anxiety is continuing, in an amount to be determined at trial in excess of $50,000.

## COUNT THREE
## VIOLATION OF PUBLIC POLICY

36. Plaintiff realleges paragraphs 1-35 above.

37. Defendant's actions are contrary to public policy.

38. As a direct and proximate result of Defendant's actions contrary to public policy, Plaintiff has suffered loss of wages and benefits that she has not yet been able to replace fully despite diligent efforts to do so, which loss of wages and benefits are continuing in an amount to be determined at trial in excess of $50,000.

39. As a direct and proximate result of Defendant's wrongful conduct toward Plaintiff, Plaintiff has suffered extreme emotional distress and anxiety, which extreme emotional distress and anxiety is continuing in an amount to be determined at trial in excess of $50,000.

## COUNT FOUR
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

40. Plaintiff realleges paragraphs 1-39 above.

41. Defendant's actions in directing Plaintiff to perform acts that were in violation of law and contrary to professional standards, while being fully aware that part of Plaintiff's responsibilities at the hospital was to act as a patient advocate and to be a member of the Defendant's ethics committee, violated Defendant's duty of care to Plaintiff.

42. It was foreseeable to Defendant that its actions would cause Plaintiff extreme emotional distress given her patient advocate and ethics committee responsibilities.

43. As a direct and proximate result of Defendant's actions, Plaintiff has suffered loss of wages and benefits that she has not yet been able to replace fully despite diligent efforts to do so, which loss of wages and benefits are continuing in an amount to be determined at trial in excess of $50,000.

44. As a direct and proximate result of Defendant's wrongful conduct toward Plaintiff, Plaintiff has suffered extreme emotional distress and anxiety, which extreme emotional

distress and anxiety is continuing in an amount to be determined at trial in excess of $50,000.

## COUNT FIVE
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

45. Plaintiff realleges paragraphs 1-44 above.

46. Defendant's actions were calculated to intentionally inflict emotional distress on Plaintiff in an attempt to force her to engage in conduct that was contrary to her employment responsibilities.

47. As a direct and proximate result of Defendant's actions contrary to public policy, Plaintiff has suffered loss of wages and benefits that she has not yet been able to replace fully despite diligent efforts to do so, which loss of wages and benefits are continuing in an amount to be determined at trial in excess of $50,000.

48. As a direct and proximate result of Defendant's wrongful conduct toward Plaintiff, Plaintiff has suffered extreme emotional distress and anxiety, which extreme emotional distress and anxiety is continuing in an amount to be determined at trial in excess of $50,000.

WHEREFORE, Plaintiff prays for judgment against Defendant, as follows:

A. For damages in excess of $50,000;

B. For attorneys fees and costs; and

C. For such other and further relief as the Court deems just and equitable in the premises.

## ACKNOWLEDGMENT

The undersigned hereby acknowledges that costs, disbursements, and reasonable attorney and witness fees may be awarded pursuant to Minn. Stat. § 549.211, Subdivision 2, to the party against whom the allegations in this pleading are asserted.

R.A. WILLIAMS LAW FIRM, P.A.

DATED: 2/4/12

_____
Richard A. Williams, Jr. 117559
2400 County Road D West, Suite 110
St. Paul, MN 55112
ATTORNEYS FOR PLAINTIFF
651-848-0280/Phone  651-848-0282/Fax

9

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Barbara Peterson, | Court File No. |
| Plaintiff, | |
| vs. | **NOTICE OF REMOVAL** |
| HealthEast Woodwinds Hospital, | **TO FEDERAL COURT** |
| Defendant. | |

TO: PLAINTIFF, ABOVE NAMED, AND HER COUNSEL OF RECORD, RICHARD A. WILLIAMS, JR., R.A. WILLIAMS LAW FIRM, P.A., 2400 COUNTY ROAD D WEST, SUITE 110, ST. PAUL, MN 55112.

Defendant HealthEast Woodwinds Hospital, by its attorneys, hereby notices the removal of this action from the District Court of the Second Judicial District Court for the County of Ramsey, State of Minnesota, to the United States District Court for the District of Minnesota, pursuant to 28 U.S.C. § 1446(a), and states as follows:

1. On January 20, 2011, Plaintiff served Defendant with a Summons and Complaint in the above-captioned matter. A true and correct copy of the Summons and Complaint, which constitutes all process, pleadings and orders served upon Defendant, is attached hereto as Exhibit A.


EXHIBIT B

233931.1

2. This Notice of Removal is filed within thirty (30) days of the date on which Defendant received the Summons and Complaint and, therefore, is timely filed pursuant to 28 U.S.C. § 1446(b).

3. The Complaint alleges discrimination in violation of the Family and Medical Leave Act, 28 U.S.C. § 2601 *et seq.*

4. Removal of this action is premised on federal question jurisdiction based upon 28 U.S.C. § 1441(a) and (b) in that this is a civil action brought in a state court of which the district courts have original jurisdiction under 28 U.S.C. §§ 1331 and 1441.

5. A copy of this Notice of Removal is being filed with the clerk of the District Court of the Second Judicial District for the County of Ramsey, Minnesota, and served upon all parties as required by 28 U.S.C. § 1446(d). A copy of the Notice is attached hereto as Exhibit B.

Dated: February 7, 2012         FELHABER, LARSON, FENLON & VOGT, P.A.

By: /s Sara Gullickson McGrane
Sara Gullickson McGrane #233213
Jessica M. Marsh, #388353
220 South Sixth Street, Suite 2200
Minneapolis, Minnesota 55402
Telephone: (612) 373-8511

ATTORNEYS FOR DEFENDANT
HEALTHEAST WOODWINDS HOSPITAL